Goodyear *v.* Vosburgh.

Ordered accordingly.

[THIRD DEPARTMENT, GENERAL TERM, at Elmira, May 7, 1872. *Miller*, P. *Potter* and *Balcom*, Justices.]

## GOODYEAR *vs.* VOSBURGH.

In an action brought upon an instrument in writing, where the signature of a subscribing witness to the instrument is alleged to be a forgery, the defendant cannot read in evidence the *assignment* of a lease put in evidence by the plaintiff, and purporting to be witnessed by the same person, (since deceased,) for the mere purpose of getting a signature for comparison with that alleged to be a forgery.

Where the question is upon the genuineness or the forgery of the signature of an individual as a subscribing witness to an instrument, an expert may be allowed to show the dissimilarity between such signature, and the signature of the same person as a subscribing witness to another instrument, by testifying that the one is a natural, and the other an unnatural hand; that there is a difference in the color of the ink, and the writing and slant of the letters; and that if one is genuine he should reject the other; provided such expert has been acquainted with the handwriting claimed to be a forgery, or the other instrument is *properly in evidence for other purposes.*

Goodyear *v.* Vosburgh.

THIS action was brought to recover for the value of wood and timber standing, under an instrument called a bill of sale. A verdict was rendered for the defendant, on a trial at the circuit. A case and bill of exceptions were made, and the judge ordered the exceptions to be heard, in the first instance, at the general term.

*E. Countryman*, for the plaintiff.

*L. L. Bundy*, for the defendant.

*By the Court*, P. POTTER, J.   There is really but one material question in this case to be reviewed; to wit, whether the judge at the circuit erred in the admission of evidence, to prove the genuineness, or the forgery, of the name of one James G. Walley, which was attached to the bill of sale as a subscribing witness thereto.   Walley had been dead many years.   The plaintiff had produced in evidence the bill of sale in question, and had offered evidence to prove the signature of Walley, as a subscribing witness, to be genuine, and had rested his case.   The defendant, after having offered some other evidence, offered to read in evidence the *assignment* of a lease, which had been put in evidence by the plaintiff; to which *assignment* the said James G. Walley appeared also as a witness. The plaintiff's counsel objected thereto, on the ground that it was *immaterial,* and that it was not offered for any other purpose than to prove a basis for a comparison of signatures of James G. Walley; and for that purpose it was inadmissible and incompetent.   The court overruled the objection, and received the evidence, and the plaintiff duly excepted.

No claim was made by the defendant, that this assignment was introduced for any other purpose than that expressed in the plaintiff's objection, and the case does not show its materiality for the defendant, in any other sense

than that expressed by the plaintiff's objection; and we must therefore assume that the judge ruled upon that assumption. The judge's subsequent rulings show that his decision was made on this assumed ground. An expert by the name of Smith was subsequently called, who, after having given his opinion as to the character of the signature claimed to be a forgery; whether it was a natural signature or otherwise; whether the letters had been changed from the original shape; and whether any of the letters had been written over; all under objection and exception; was asked to look at the said assignment, and the signature of the said James G. Walley as a witness thereto. The plaintiff's counsel duly objected to this, on the ground that it was a paper read in evidence merely for the purpose of comparison of signatures. The court overruled the objection, and the plaintiff excepted. The court allowed (under objection and exception) the witness to show the dissimilarity of the two signatures, that the one was a natural, and the other an unnatural hand; the difference in the color of the ink; the writing, and slant of the letters, and to say that if one was genuine he should reject the other. It was conceded, and the objection stated the fact, that the witness never had any knowledge of the handwriting, about which he was testifying. These same questions, objections, rulings and exceptions were repeated to three other witnesses, Lee, Scott and Avery, as experts.

The verdict of the jury, in this case, upon conflicting evidence, would seem to establish that the signature to the bill of sale was a forgery. The questions put to the experts, which were objected to, would, I think, all be brought within the rules laid down in *Van Wyck* v. *McIntosh*, (14 *N. Y.* 439 ;) *Dubois* v. *Baker*, (30 *id.* 355 *to* 366 ;) *Johnson* v. *Hicks*, (1 *Lansing*, 150, 162 ;) *Ellis* v. *The People*, (21 *How.* 356 ;) and in the MS. opinion of MILLER, P. J., in this same action, if those witnesses had been acquainted

with the handwriting claimed to be a forgery.  Or, if the assignment in question *had been properly in evidence for other purposes*.  But I am inclined to think that the introduction of this assignment for the mere object of getting a signature for comparison, (a fact not at all controverted,) is, upon the authority of all the cases above cited, error. Upon this ground, I think a new trial should be ordered, costs to abide the event.

New trial granted.

[THIRD DEPARTMENT, GENERAL TERM, at Elmira, May 7, 1872.  *Miller, P. Potter* and *Parker*, Justices.]